IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-371-BO

| | |
|---|---|
| FREDERICK AIKENS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM E. INGRAM, JR., individually ) <br> And in his capacity as Adjutant General of ) <br> The NORTH CAROLINA ARMY ) <br> NATIONAL GUARD and PETER VON ) <br> JESS, individually and in his capacity as ) <br> Lieutenant Colonel of the NORTH ) <br> CAROLINA NATIONAL GUARD, ) <br> ) <br> Defendants. ) | O R D E R |

This cause comes before the Court on defendants' motion for summary judgment, to which the plaintiff has responded in opposition. [DE 53, 60]. A hearing was held before the undersigned on November 10, 2014, in Elizabeth City, North Carolina, and the matter is ripe for ruling. For the reasons discussed below, defendants' motion is GRANTED.

BACKGROUND

Plaintiff originally filed this action alleging a civil rights claim pursuant to 24 U.S.C. § 1983 and a state law tort claim for invasion of privacy. Plaintiff clarified in his motion to dismiss that he has not brought a state law claim for invasion of privacy, thus only the § 1983 claim remains before the Court. [DE 10 at 20]. Plaintiff was a longtime member of the North Carolina Army National Guard, who in 2001, was called to active duty in support of the War Against Terrorism and prompted to full Colonel and Commander of the 139th Rear Operations center. In December 2002, plaintiff was instructed to complete an officer evaluation report of defendant

Von Jess. Defendant Ingram later invalidated that report, and plaintiff filed a complaint regarding defendant Ingram's actions with the Department of the Army Inspector General ("DAIG"). In January 2003, plaintiff's unit was again called to active duty and deployed to Camp Doha, Kuwait. On or about November 24, 2003, plaintiff was notified that defendant Ingram had used illegal means to obtain emails sent to plaintiff's personal email account and plaintiff alleges that beginning in May 2003, through December 2003, the email account he accessed while deployed was monitored, intercepted, and forwarded to defendant Von Jess. In May 2004, plaintiff was notified that he was being investigated for hostile command climate and inappropriate relations with women. A DAIG investigation subsequently substantiated plaintiff's allegations that his email was improperly browsed in violation of Army regulations, but determined that the information contained in the email could be used in the investigation. [DE 2–1 at 2–3]. The DAIG subsequently found six allegations of active duty misconduct by plaintiff were substantiated, and provided its findings to the North Carolina Governor and to defendant Ingram. [DE 55–1 at 10–13]. In June 2005, defendant Ingram forwarded the findings to the Commander, First U.S. Army Lieutenant General. [*Id.* at 14]. The following month, the Lieutenant General withdrew federal recognition from plaintiff. [*Id.* at 15–16]. On July 28, 2005, plaintiff waived a hearing on this withdrawal of federal recognition and elected to transfer to the retired reserve. [*Id.* at 19].

Plaintiff filed a civil action in this Court on April 27, 2006, alleging the same claims as here, as well as a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). No. 5:06-CV-185-D. By order entered September 13, 2007, this Court dismissed plaintiff's amended complaint without prejudice so plaintiff could first pursue

his military administrative remedy. Plaintiff did so, and the Army Board for Correction of Military Records ("ABCMR") determined it lacked jurisdiction to hear plaintiff's claims.

Plaintiff then returned to this Court on March 31, 2008, by filing a motion pursuant to Federal Rule of Civil Procedure 60(b)(6) in his earlier filed action. This Court denied Plaintiff's Rule 60(b) motion. Plaintiff appealed, and this Court's denial was affirmed first by panel opinion, *Aikens v. Ingram*, 612 F.3d 285 (4th Cir. 2010), then subsequently by a published split en banc opinion filed July 13, 2011, *Aikens v. Ingram*, 652 F.3d 496 (4th Cir. 2011) (en banc). Two days later, plaintiff filed the instant action. [DE 1]. Defendants filed a motion to dismiss [DE 8] over plaintiff's opposition [DE 10]. This Court granted the motion to dismiss, finding that plaintiff's complaint was filed outside the applicable statute of limitations. [DE 11]. Plaintiff appealed, and a panel of the Fourth Circuit Court of Appeals reversed the Court's order. *Aikens v. Ingram*, 524 F. App'x 873 (4th Cir. 2013). Once the case was reopened, defendants filed a motion asking the Court to rule on their remaining grounds for dismissal [DE 33], which plaintiff opposed [DE 41]. On February 4, 2014, this Court denied defendants' motion to dismiss. [DE 50]. After the discovery period concluded, defendants filed a motion for summary judgment [DE 53], which plaintiff opposes [DE 60].

Plaintiff seeks (1) a declaration that each defendant's actions were unlawful; (2) to enjoin each defendant from such illegal conduct in the future; (3) to enjoin each defendant from retaliating against him; (4) to mandate reinstatement of plaintiff's military fringe benefits and seniority rights; and (5) damages including but not limited to his back wages.

## DISCUSSION

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the movant is entitled to

3

judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). An issue is "genuine" if a reasonable jury, based on the evidence, could find in favor of the non-moving party. *Anderson v. LibertyLobby, Inc.*, 477 U.S. 242, 248 (1986); *Cox*, 249 F.3d at 299. The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–23. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (2010). . Once a motion for summary judgment is properly made and supported, the non-moving party bears the burden of production of evidence that creates an issue of material fact on an element essential to his case and on which he will bear the burden of proof at trial. *Celotex*, 488 U.S. at 323. A non-movant "may not rest upon mere allegations or denials," but rather must demonstrate that a triable issue of material fact exists. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). "The mere existence of a scintilla of evidence" in support of the nonmoving party's position, however, is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [factfinder] could reasonably find for the [nonmoving party]." *LibertyLobby,* 477 U.S. at 252. In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

I. JUSTICIABILITY

Members of the armed services may not maintain suits against the government for injuries that "arise out of or in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 145 (1950). The *Feres* doctrine applies to all suits for damages and extends to *Bivens*

4

actions. *Chappell v. Wallace*, 462 U.S. 296, 305 (1983); *United States v. Stanley*, 483 U.S. 669, 684 (1987). It is considered a doctrine of justiciability. *See, e.g., Minns v. United States*, 155 F.3d 445, 448–49 (4th Cir. 1998); *Williams v. Wilson,* 762 F.2d 357, 360 (4th Cir. 1985) (extending *Feres* doctrine to cases involving equitable relief as discussed *infra*, via *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971)). The *Feres* exception applies to discourage courts from "tamper[ing] with the established relationship between enlisted military personnel and their superior officers" because "that relationship is at the heart of the necessarily unique structure of the Military Establishment." *Chappell*, 462 U.S. at 300.

In this case, plaintiff in this case seeks both equitable relief and damages.[1] When addressing the justiciability in the context of non-*Bivens* actions against military officers, the Fourth Circuit applies the four-part test outlined in *Mindes*, 453 F.2d at 201–02 (5th Cir. 1971) Under the *Mindes* test, a civilian court should not review internal military affairs "in the absence of (a) an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures." *Id.* at 201. If a plaintiff meets these requirements, the court should use a four-part balancing test to determine the justiciability of the case by considering: "(1) the nature and strength of the plaintiff's challenge to the military determination . . . ; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved." *Id.* at 201–02.

It is worth noting that this Court dismissed a companion case stemming pursuant to the *Mindes* doctrine in 2005. *Culbreth v. Ingram*, 389 F. Supp. 2d 668 (E.D.N.C. 2005). Major

---

[1] Plaintiff acknowledges that the Eleventh Amendment protects defendants from suit for federal damages in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also,* Part II, *infra*, discussing sovereign immunity.

5

Culbreth was a correspondent to plaintiff's military work station computer in Kuwait whose emails were discovered during the same monitoring at issue in this case. *Id.* at 671. Based on the content of the emails he sent, Major Culbreth was dismissed from the North Carolina National Guard before qualifying for any U.S. Army retirement. *Id.* at 676. Major Culbreth asserted a very similar Fourth Amendment claim to the one at issue here, and the Court dismissed the case as non-justiciable under *Mindes*. *Id.* at 678.

Plaintiff alleges deprivation of his constitutional rights, thereby meeting *Mindes's* first threshold requirement. *Mindes* also requires "exhaustion of available intraservice corrective measures." 453 F.2d at 201. Plaintiff exhausted his intraservice remedies by going to the ABCMR, which determined that it could not afford him the relief he seeks. Accordingly, plaintiff meets the threshold requirements of *Mindes*, and the Court's analysis moves on to the justiciability of plaintiff's case under the four-part balancing test.

The first factor involves the nature and strength of plaintiff's challenge to the military determination. *Mindes*, 453 F.2d at 201–02. Constitutional issues are considered more important than statutory or regulatory claims for purposes of the *Mindes* analysis. *Id.* at 201. Plaintiff raises a Fourth Amendment claim in his complaint that hinges on whether he had a legitimate expectation of privacy in the personal email account he accessed from a military computer while deployed in Kuwait.

Plaintiff's Fourth Amendment claim is weak. The Fourth Amendment protects the right of people to be secure in their "persons, houses, papers, and effects" from unreasonable searches and seizures. A search occurs for purposes of the Fourth Amendment when the government violates a person's reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). It is well settled that public employees have a reasonable

6

expectation of privacy in their workplace. *See, e.g., O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). The *O'Connor* Court noted, however, that "[p]ublic employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id*. The Fourth Circuit more recently acknowledged that the workplace privacy limitation extends to internet communications. *United States v. Simmons* 206 F.3d 392, 398 (4th Cir. 2000). Where an employer's internet policy "placed employees on notice that they could not reasonably expect that their Internet activity would be private," an employee's subjective belief that his internet activity was private was not "objectively reasonable." *Id*.

The evidence is undisputed that Army Regulation 380–19 was in effect at the time of the email monitoring in question. Army Regulation 380–19 states that:

> Notification procedures, per AR 380–53, will be established to ensure that all users of official DOD systems within the Army understand that their use of DOD systems constitutes consent to security monitoring. The following banner will be included as part of the log-on screens on all computer systems:
>
> ATTENTION!
>
> THIS IS A DOD COMPUTER SYSTEM. BEFORE PROCESSING CLASSIFIED INFORMATION, CHECK THE SECURITY ACCREDITATION LEVEL OF THIS SYSTEM. DO NOT PROCESS, STORE, OR TRANSMIT INFORMATION CLASSIFIED ABOVE THE ACCREDITATION LEVEL OF THIS SYSTEM. THIS COMPUTER SYSTEM, INCLUDING ALL RELATED EQUIPMENT, NETWORKS AND NETWORK DEVICES (INCLUDES INTERNET ACCESS) ARE PROVIDED ONLY FOR AUTHORIZED U.S. GOVERNMENT USE. DOD COMPUTER SYSTEMS MAY BE MONITORED FOR ALL LAWFUL PURPOSES, INCLUDING TO ENSURE THEIR USE IS AUTHORIZED, FOR MANAGEMENT OF THE SYSTEM, TO FACILITATE PROTECTION AGAINST UNAUTHORIZED ACCESS, AND TO VERIFY SECURITY PROCEDURES, SURVIVABILITY, AND OPERATIONAL SECURITY. MONITORING INCLUDES, BUT IS NOT LIMITED TO, ACTIVE ATTACKS BY AUTHORIZED DOD ENTITIES TO TEST OR VERIFY THE SECURITY OF THIS SYSTEM. DURING MONITORING, INFORMATION MAY BE EXAMINED, RECORDED, COPIED, AND USED FOR AUTHORIZED PURPOSES. ALL INFORMATION, INCLUDING PERSONAL INFORMATION, PLACED ON OR SENT OVER THIS SYSTEM MAY BE MONITORED. USE OF THIS DOD COMPUTER SYSTEM, AUTHORIZED OR

UNAUTHORIZED, CONSTITUTES CONSENT TO MONITORING. UNAUTHORIZED USE OF THIS DOD COMPUTER SYSTEM MAY SUBJECT YOU TO CRIMINAL PROSECUTION. EVIDENCE OF UNAUTHORIZED USE COLLECTED DURING MONITORING MAY BE USED FOR ADMINISTRATIVE, CRIMINAL, OR OTHER ADVERSE ACTION. USE OF THIS SYSTEM CONSTITUTES CONSENT TO MONITORING FOR ALL LAWFUL PURPOSES.

Accordingly plaintiff was on notice that his email would be monitored, and it would have been unreasonable for him to expect his email to remain private. Moreover, although "the Fourth Amendment protects people, not places," the forum in which a challenged activity occurs affects what can reasonably be expected to remain private. *Katz*, 389 U.S. at 351. In a war zone, where security is a primary concern, one would reasonably expect to enjoy less privacy than in one's home away from the dangers of war. Given the security issues inherent in a war zone and the notice plaintiff received that his email would be monitored, at minimum it is questionable whether he could reasonably expect that the contents of his email would remain private.

Even if the Court found that he had a reasonable expectation of privacy in his email, however, liability attaches under § 1983 only where a defendant "acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quotation and citation omitted). It is undisputed that neither defendant was present in Kuwait nor participated in the email monitoring. A supervisor may be held individually liable for the unconstitutional acts of a subordinate only where (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct posing "a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor was deliberately indifferent to or tacitly authorized the conduct; and (3) there exists an "affirmative causal link" between the supervisor's actions and the constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). At the hearing, plaintiff's counsel conceded that there is no concrete evidence that defendant Von Jess was involved in the

email monitoring. The DAIG found that defendant Ingram properly forwarded the information he received to those officers who had authority over plaintiff. [DE 55–1 at 11]. Moreover, as discussed in section II, *infra*, defendants are entitled to both sovereign and qualified immunity. Given the questionable nature of plaintiff's expectation of privacy, the inapplicability of supervisory liability under § 1983, and defendants' immunity, plaintiff's Fourth Amendment claim is weak. The first *Mindes* factor therefore weighs against justiciability.

The second *Mindes* factor examines the potential injury to plaintiff if judicial review is found inappropriate. Plaintiff waived the opportunity to contest the withdrawal of federal recognition. He qualified for United States Army retirement in the grade of full Colonel, is on the Army retired list, and is drawing federal retirement. Under federal law, plaintiff was required to retire when he obtained his mandatory retirement date at thirty years of credible commissioned service. 10 U.S.C. § 14507. Though he was quite close to his mandatory retirement date, he had not reached it when he retired, therefore his pay is lower than it would have been had he not retired prior to his mandatory retirement date. It is clear, therefore, that plaintiff could suffer some injury if judicial review is found inappropriate, and because the ABCMR determined it cannot provide the relief he seeks, this Court may be plaintiff's only opportunity for relief. Accordingly, the second *Mindes* factor weighs in favor of justiciability.

The third *Mindes* factor requires consideration of the type and degree of interference with military function, while the fourth *Mindes* factor looks to the extent to which the exercise of military discretion is involved. The two are generally considered together. *Culbreth v. Ingram*, 389 F. Supp. 2d 668, 676 (E.D.N.C. 2005). Here, review of plaintiff's claims would involve substantial interference with military function. The DAIG inquiry concluded that defendants did not act in error. [DE 55–1 at 11–13]. Plaintiff asks this Court to second guess the Army's

9

decision to consider the emails, find military misconduct in a combat zone, and as a result, withdraw federal recognition. As in *Culbreth*, "this would involve the Court in a sensitive area requiring military expertise and discretion." *Id.* at 677. The requested relief emphasizes the level of interference with military function and exercise of military discretion at issue in this case. Plaintiff wants the military to reinstate his benefits and award him back pay despite its finding that he engaged in misconduct. In essence, plaintiff asks the military to exercise its discretion in a manner diametrically opposed to its prior findings. The requested relief demonstrates that this decision falls squarely within the discretion of the military. In an analogous case, the Fourth Circuit held that the third and fourth *Mindes* factors weighed against review, as did this Court in the companion case of *Culbreth*. *Guerra v. Scruggs*, 942 F.2d 270, 280 (4th Cir. 1991); *Culbreth*, 389 F. Supp. 2d at 677–78. This Court also finds that the third and fourth *Mindes* factors weigh against review.

Here, three of the four *Mindes* factors weigh against judicial review. Accordingly, the Court finds that the *Mindes* doctrine requires the Court to grant summary judgment in favor of defendants for lack of jurisdiction. Although this means plaintiff's potential injury will go without review, "the fact that the [*Mindes*] doctrine may in many cases lead to undeniably harsh results does not relieve this court of its obligation to apply precedent." *Appelhans v. United States*, 877 F.2d 309, 313 (4th Cir. 1989).

II. IMMUNITY

In the alternative, even if judicial review were appropriate, sovereign immunity bars relief against either defendant in his official capacity and qualified immunity bars relief against monetary relief against either defendant in his individual capacity.

10

A. Sovereign Immunity

The Eleventh Amendment bars suit "in law or in equity" against the State or a state official sued in his official capacity. The only exception is that provided in *Ex Parte Young*, 209 U.S. 123 (1908). *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001). Neither the State, nor a state official sued in his official capacity is a "person" within the meaning of 42 U.S.C. § 1983, therefore no money damages are available against either defendant in his official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); [D.E. 10 at 20] (conceding that Eleventh Amendment bars plaintiff's request for damages against defendants in their official capacities).

Accordingly, plaintiff seeks no money damages from either defendant in his official capacity, but argues that his requested equitable relief fits within the *Ex Parte Young* exception. This requires that he prove (1) an ongoing violation of federal law; and (2) that the requested relief is properly characterized as prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.* 535 U.S. 635, 645 (2002). He cannot meet this burden.

Plaintiff fails to prove an ongoing violation of federal or constitutional law. The monitoring of the workplace email records in question was a one-time occurrence in 2003. No facts have been alleged that either defendant has taken similar action in the intervening decade as to plaintiff. Neither has plaintiff alleged any facts that demonstrate either defendant is capable of such prospective conduct as to him, since neither defendant is currently part of the North Carolina National Guard. Nor has plaintiff proven that there is a National Guard practice that requires his emails to be monitored in violation of the Fourth Amendment. Accordingly, there is no basis on which to impose prospective injunctive relief against the National Guard or either defendant.

Plaintiff also fails to prove that the requested relief is prospective. By definition, a declaration that past conduct was illegal is not prospective. *Manning v. S.C. Dep't of Highway and Pub. Transp.*, 914 F.2d 44, 48–49 (4th Cir. 1990). The individual defendants named herein also lack the authority to restore plaintiff's benefits. His military service was terminated as a result of federal United States Army action. Neither defendant is affiliated with the federal government, thus they can neither undo these federal actions nor be ordered to do so. Plaintiff concedes that defendants cannot reinstate any benefits or seniority rights. [DE 55–5 at 19]. Accordingly, plaintiff's requested relief does not fit within the exception outlined in *Ex Parte Young*, and sovereign immunity bars any claims against defendants in their official capacities.

B. Qualified Immunity

Qualified immunity likewise bars any monetary relief against defendants in their individual capacities. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal citation and quotation omitted). Existing precedent must place the "constitutional question beyond debate," leaving no doubt that the challenged action was unconstitutional. *Braun v. Maynard*, 652 F.3d 557, 562 (4th Cir. 2011) (internal citation and quotation omitted). "For a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013) (quoting *Hope v. Pelzer*, 536 U.S 730, 739 (2002)). When engaging in this analysis, a court looks to "the information possessed by the ... officials and to what a reasonable officer would have concluded from that information."

*Braun*, 652 F.3d at 563. The immunity applies unless no reasonable lay person in defendant's position "could have believed he had the right" to do what he did. *Bland*, 730 F.3d at 391.

Defendants are entitled to qualified immunity because they were not involved, directly or indirectly, in the monitoring in Kuwait. Moreover, the DAIG's investigation concluded as much. [DE 55–1 at 10–13]. The DAIG specifically found that defendant Von Jess's decision to forward the documents to an Inspector General ("IG") did not violate federal law. [*Id.* at 12]. Commander Ingram was shown the emails by the IG. He sought advice on what to do from United States Army authorities, the Commanding General and the DAIG. No evidence has been presented that he did other than those federal officers directed. No evidence has been presented that demonstrates either defendant knew how the emails were obtained nor reasonably should have understood that their actions violated the Fourth Amendment.

The objective reasonableness of defendants' actions is underscored by the fact that these events took place in 2003. As late as 2010, there was a lack of clarity regarding privacy actions in electronic workplace communications. *Braun*, 652 F.3d at 562–63; *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 759 (2010) ("The Court must proceed with care when considering the whole concept of privacy expectations in communications made on electronic equipment owned by a government employer. The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear."). The emails in this case occurred seven years prior to the Supreme Court's decision in *Quon*, at a time when the reasonable expectation of privacy within the digital communication sphere was even less well-resolved in both the court system and the perception of the public. In 2003, the constitutionality or unconstitutionality of the email monitoring was by no means crystal clear. Combined with the fact that defendants were not the ones monitoring the email, defendants are

entitled to qualified immunity. Accordingly, even if the Court had decided that it had jurisdiction, plaintiff would be barred from relief against defendants in their official capacities by the Eleventh Amendment and from monetary relief against defendants in their individual capacities by qualified immunity.

## CONCLUSION

For the aforementioned reasons, defendants' motion for summary judgment is GRANTED. The Clerk is DIRECTED to close the file.

SO ORDERED, this __2__ day of December, 2014.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE